All right, are both of you ready to proceed? Okay, counsel them when you're ready. Good morning, your honors. Counsel. My name is Jamie Montgomery. I'm with the Office of the State Appellate Defender. I'm appearing today on behalf of Randall Stafford, the defendant appellant. Randall Stafford filed a Rule 472 motion that was seeking credit for the time he spent on home confinement prior to trial. And the trial court denied the motion on the basis that it did not believe it had jurisdiction to consider the motion. On appeal, we have argued first that the court erroneously found that it lacked jurisdiction because it absolutely had jurisdiction under Rule 472, and that, in fact, Mr. Stafford was entitled to the credit he was seeking. The State has not challenged our argument about the jurisdiction. Therefore, I will be focusing my comments today on the credit issue. Let's talk about how do you distinguish the Donahue case? Well, it's really important here to look at how the statutes have evolved over time. And, you know, this all sort of goes back to the Ramos decision, which is 35 years old and multiple versions of the statute ago. In fact, it was, you know, it was codified differently then. That brings up this point that the General Assembly has been aware of Ramos all those years, correct?  And nowhere in any provision does it say that the defendant on bond is eligible for credit for time served. Correct? Correct. The statute talks about home detention. My point is that if the General Assembly, if the intent was to allow credit for time served for individuals on pretrial bond conditions, they would have said so. Well, I would argue, Your Honor, that the legislation, so Ramos came out in 1990, and the statute was amended effective 1991, I believe. And in the amendment at that time, the legislature added the language about pretrial home confinement and that you could be in home detention prior to trial. Now, is it an exact response to Ramos? Who can say? I mean, it's arguably the legislature amending the statute in some fashion to include it. I mean, if the legislature were to randomly leave it as murky, they would have made it clear, would they not? I think we can all agree that there are times when the legislature is not as clear as we would like and uses multiple terms to mean the same thing. But essentially, you're asking us to not follow and reject Curry and Donahue. Correct? Correct. So getting back to Justice Shostak's question, Donahue involved the 2020 version of the of Section 5-4.5-100. And in that version of the statute, it did it did have the language that the court shall give a defendant credit, but it did not have the language that is now in the statute, which became effective in 2021. And is, in fact, the language that applies in this case where the legislature added the language discussing what home detention means. And in that section, it talked. It says that it means restrictions on liberty, such as curfews for 12 or more hours a day or electronic monitoring that restricts movement or travel. And under the plain language of Section 5-4.5-100B, that's in effect in 2021 when Mr. Stafford's case takes place. He absolutely qualifies under both of those categories. He was as discussed in the briefs at length. He was in his order to stay within his home 24 hours a day. The only supervising authority was the judge, not probation, the sheriff's office or the conditions were set by the trial court, not by some other authority. Correct. Which is distinct that distinguishes his conditions on bond from custody. The conditions of his release were set by the judge. The conditions of his confinement were controlled by the monitor. Yes. And while the judge said that. But isn't that monitoring compliance with what the judge said as opposed to creating a new set of criteria? I'm sorry. Could you ask that again? Sure. Judge sets the conditions. Here's what you can do. Probation, make sure he's doing it. As opposed to probation, will you just run with it and you decide when he can be released or not? You see a distinction there? Well, here, Mr. Stafford, the judge said he could, you know, he had the exceptions for when he could leave his home. However, he couldn't leave his home whenever he felt like it to go to those things. He had to have the permission from the monitoring agency. But they could give him no more or no less than what he was allowed by the court. Correct. But they could have said every time he asked to go to anything.  But that didn't happen here. So what they could have done. I don't have proof of that. Is not part of this record. Correct. Okay. However, the notion that is argued in the briefs, the fact that the reliance on who is a supervising authority ignores what the plain language of the statute is. There is the, because in response to, you know, as I've talked about, the statute has been amended many times. And the, in response to cases where they were talking, well, arguably in response to cases where defendants were denied credit, the legislature has, as I said, amended it to include what home detention means. And to indicate that it means electronic monitoring that restricts traveler movement. And that it, and so if home detention can now only ever be, if it's by a supervising authority, you know, we. Different, the state addresses Curry. Talks about the Curry case, which basically says the judge being the individual who set the conditions. Basically the supervising, regardless of them not being the actual supervising authority, they set the conditions. How do you distinguish that case? It says the, qualifies as the court being the supervising authority. How do we get around that? And I think that's what Justice Jorgensen and Justice Burkett are asking. How do we get around that? And I think Curry addresses the 2021 amendment. It does. Respectfully, Curry adopted Donahue without much analysis. And ignored the fact that Donahue involved the 2020 statute. When we're following the Supreme Court precedent, we usually don't have to go through a lot of analysis. Because the Supreme Court's word on this is final. And I know you cited Wells for the proposition that the court is hinting at, you know, this is now going to be eligible for. But that is not what we are bound to follow. We're bound to follow Reynolds. And we said that in Curry, that time spent on bond in home confinement or home detention is never going to qualify as custody. And we follow Reynolds. Except that Reynolds is no longer a good law after the legislative amendments. Because Reynolds involved a statute that only involved, only looked at whether or not the confinement was equivalent to custody. How do you take somebody who's in custody and who's under the auspices of the sheriff, whose rights and liberties within that jail are all supervised, you compare that to somebody who's on home detention pretrial, on pretrial release? It's completely different. I think this is where Beecham comes in. And Reynolds talked about that. Reynolds did talk about that. But, again, Reynolds was decided before electronic home monitoring existed. And involved different, you know, it's essentially, it's a 35-year-old case talking about a 35-year-old statute that no longer exists in the form that it existed then. And in response to Reynolds, the legislature amended the statute to include home detention as an option for electronic monitoring. And, in fact, Reynolds said that, I mean, they acknowledged that there had been, that there was an amendment to the statute that was taking effect that would permit that. But said that it could not discern from that amendment an intent to extend the defendant's right to custody to pretrial detention. I'm very badly paraphrasing. And that's because the amendment at that time was simply to Section 587B. And in response to, in response to that, the... Who was the supervising authority in the Beecham case? A sheriff's office, because it was a home, it was a day reporting program. Yeah. The Beecham case, I think, is, on the one hand, it's, I mean, it's helpful here because, all right. This Court said in Curry and the Court in Donohue said that the through line here is that it's never automatic that a defendant on pretrial bond supervision is going to be given credit. Right. And we're not arguing that a defendant is now always entitled to pretrial bond, to credit for this. So that through line still exists even under the statute as it exists now. The legislature's amendment to the statute simply provided the, provided more information about what constitutes home detention for purposes of credit in response to cases from the appellate courts that, you know, that basically expanded on what constitutes home detention and indicated that pretrial bond supervision, when it involves, like, restrictions on liberty, that are going to be more similar to, say, the sheriff's day reporting program in Beecham. So what you're saying is even if the trial court is the supervising authority, there are instances wherein the defendant would be entitled to credit for time served at home. Yes. And the deciding factor, so, and here it's, you know, like Mr. Stafford, you know, he was basically restricted to literally the, you know, he was not allowed to even step outside his home 24 hours a day. And he was on electronic monitoring. Then did it change? I don't believe. Did the conditions change? There was some change of conditions over time, but the 24 hours a day at home, with some exceptions, was the same. I think the exceptions may have changed. Yes. They were expanded. And, you know, the, if we focus solely on who the supervising authority is, we're ignoring the legislature's clear intent to give some defendants who are on pretrial bond supervision credit for the time they spend in home confinement, which is very similar to, say, the sheriff's reporting program in Beecham. That's, you know, pretrial bond supervision that is more similar to custody, even though I'm not arguing that we have to decide whether it's custodial or not because that language has changed. In Beecham, the sheriff's home detention program was to reduce the overcrowding in the Cook County Jail, right? I believe so. Yeah. That's not a situation that's present here. I mean, this guy, the defendant, is on pretrial release. Yes. He posted bond. With conditions. Mm-hmm. Yes. Except by the judge. Right. But the conditions amount to do home detention because they meet the now statutory definition of home detention for purposes of credit, which is significant restrictions on liberty. But not people on pretrial release. They're people in home detention. But the legislature's amendment to the statute indicates that home detention means more than just home detention as a post-judgment sentence. That pretrial, that home detention now includes, you know, there's always been language, you know, there's language that the home detention can be post-trial or it can be pretrial. Now, if the only way you can ever get out of jail is through pretrial bond, which, you know, pretrial release is set by judges. So if the thing that matters is who is the supervising authority and the only way you ever get out of jail is by a judicial order, like, that doesn't, it doesn't make any sense. You wouldn't want your client to get out of jail, stay there and get the credit for the time served, right? I'm sorry, what? You wouldn't want your client to get out of jail pretrial, stay there and get credit for the time served. Correct. And if, let me just finish my thought. The, in Donahue and I believe in Curry, there was, the courts observed that this could be, you know, alleviated by the judge indicating that they were putting, that the defendant is being released on bond with home confinement, but this counts as home detention. Well, the legislature, with amending the statutes as it has, has not, if we leave it up to the hands of the judge to determine willy-nilly whether this is home detention or not, that's overriding the legislative intent through judicial fiat, and that cannot be what the legislature meant. Home detention for persons on bond is not punitive. It's not intended to be punitive. It's intended to assure the defendant's appearance in court and compliance with conditions of bond, not to reoffend, et cetera, not to use controlled substances. It's never punitive. It's not intended to be punitive. Right? Sure. Yes. Okay. That's all. Any additional questions? No. Okay. Thank you. Thank you. Good morning. Good morning, justices, counsel, may it please the court. My name is Gabrielle Moore, and I represent the people of the state of Illinois. Today we are here to address an issue that has already been resolved by this court in People v. Curry, of whether this defendant was entitled to sentencing credit for time spent on electronic monitoring prior to his trial. And the answer is no. The defendant was on home supervision as a condition of bond. First, the plain language of this statute is clear as to what qualifies as home detention for purposes of credit. In this case, the defendant being monitored electronically with conditions that provided him extensive leeway did not amount to home detention for purposes of credit under the statute. This issue is well-settled, and a matter of starting decisions, this court should follow its ruling inquiry and affirm the trial court's order denying him credit. Do you use the words home detention and home supervision interchangeably? No. No, I don't use it interchangeably. This court addressed the difference between home supervision as a condition of bond and home detention in Curry. It explained that when the trial court has established the terms and conditions of the bond, it doesn't change the conclusion that that is still home supervision as a condition of bond rather than home detention. And the statute states that for purposes of credit includes restrictions on liberty, such as curfews restricting movement for 12 hours or more per day, and electronic monitoring that restricts travel or movement. So it has two distinct definitions in two different contexts. How is this case any different? I mean, the court put restrictions on Mr. Stafford, and, you know, you can't go out this period. The only reason you go out is for this purpose. How is that any different than home detention? I believe it to be very different from home detention. The defendant had massive potential for movement. He just had to ask permission. He was permitted to go to doctor's appointments, counseling appointments, the pharmacy, in-person interviews for employment, the grocery store with his mother. Just with preapproval, we had, and there wasn't like set times, like a curfew in which these tasks had to be completed, so it wasn't like a 7 p.m. curfew or a 10 p.m. curfew. Unrestricted visitors, too. You could have anybody come to the house. Yes, absolutely. There wasn't defined times from which he could leave his home or a limit on how many times he could leave his home in a day or within a week, so it wasn't like he could only go, you know, to an employment appointment once a week, and that was it. He had extensive amount of leeway. I think it's rather specific. He was on EMH, wasn't he? Yes. So, you know, when I asked you the difference between home detention and home supervision, for home detention, you explained exactly what Mr. Stanford is dealing with. He was on electronic monitoring, and he was limited in his movement. He was limited to what he requested. Like he could have requested more opportunities to leave the home. His failure to do so isn't now a charge to the trial court to say they placed him on home detention. If he wanted to leave all day, ultimately, 24 hours a day, he just had to ask permission, and that's what it came down to. So even on electronic monitoring, he could have in one day went to, you know, all the things that I listed, appointments, grocery store, pharmacy. He could have gone from, you know, 8 a.m. to 11 if that's what was required out of what he needed to do. He just had to ask permission. So it's just speculative, you know, to say that he was bound for 24 hours a day. If he was restrained for 24 hours a day, that was due to his lack of failure to ask, you know, to leave the home for the times that were, for the circumstances that were pre-approved, or additional circumstances that could have been approved had he asked. And that's why I believe that that's what makes this case different, where it wasn't custodial. We believe that it was home supervision as a condition of his bond. It was at the pre-trial stage. My apologies. And even in the statute, it states that the court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration. And so I think the statute is rather clear in its plain language that this was intended for credit to be counted as like a post-judgment rather than a pre-trial. And so in response to the comment that sentencing credit can be more than a post-judgment sentence, I think the legislature is rather clear to say that this is intended to align with sentencing incarceration terms. And to your point, Justice Prickett, if they wanted to say otherwise, they would have. Like, we have, I'm sure you have encountered statutes that were rather ambiguous. I don't think that's what's in front of you today. This is a very well-thought-out legislature in the states, the times where, you know, what credit can be given under what circumstances, what qualifies as confinement, and what doesn't. And I think in this case, the facts lead more to this being home supervision rather than home detention. Furthermore, the defendant, during his time on bond, the people filed a petition to revoke or increase bond because the defendant tampered, you know, with his bracelet. A warrant was issued because the resident defendant failed to obtain prior approval or sufficient notice to make stops, and he made unapproved stops. How is that relevant to what we're doing here? I believe it's relevant because the argument that the defendant believes that he should be getting a pretrial credit for the time that he was being monitored for time where he wasn't even fully compliant with the bond conditions in themselves, like the bond conditions were set to ensure that, you know, he shows up to court. And, you know, if you are submitting that he left when he shouldn't, could you parse that out and say he'll get credit for this time but not this time? Or are you saying no all of that time because there's a difference between home supervision and home detention? I'm submitting the latter, that all of that time because there is a difference between home supervision and home detention. Counsel argues that Wells, in Wells, the Supreme Court hinted at that this should qualify for credit for time served because the court said in Wells, by pleading guilty and the agreed sentence, the defendant waived his right to claim credit for time served. So does that move the ball at all? I don't believe it moves the ball at all. Wells was resolved. It was post-plea. It was post-plea, so it was resolved on that. Then he was seeking credit for home detention or home monitoring while he was on bail. Yeah, after the fact. So he had, you know, entered the plea for, you know, the terms. And the court said he waived his right to claim that. Yeah, yeah, that he waived his right. So that was, Wells dealt with the matter of waiver, you know, waiving your rights to, you know, child-sharing things after you've entered a plea. And so I don't think it should be relied upon for an interpretation of statute that it really did not advance. I think at that point we're kind of reading in between the lines of what Wells is saying. And it's not really relevant to what we have here. Wells didn't resolve that matter on credit. It didn't even get that far because it dealt with the fact that you waited too late to bring this up, basically. You know, it should have been addressed prior to you entering the plea rather than afterwards. So I don't think that really informs, you know, the court's decision on this matter, that for purposes of credit, the defendant was not in home detention. He was being supervised. The statute, Section 5AA, addresses when a person may be placed on electronic monitoring or home detention. That's what that section focused on solely. So this is when there could be, you know, particular offenses. This is when they could be placed on electronic monitoring. And the prestige stage was included, you know, amongst, you know, different contexts of when they can be applied. But that's the extent of what that section deals with. The section that we're dealing with addresses when sentencing credit can be applied and it defines when home detention, you know, counts in the circumstances in which it would apply, which is whether it be curfews or, you know, and electronic monitoring. And so those are two different statutes. So we don't need to. Did he have curfew? I don't believe he had curfew. He didn't have a set time where, again, he had to be in by 7 p.m., like all these pre-approved circumstances or opportunities had to be completed by 7 p.m. or they could not be done. You know, that's not what he was dealing with. It wasn't 7 p.m. or 10 p.m. So if a trial court sets a court curfew 7 to 7 curfew, that is, in your opinion, would he be entitled to credit or no because a trial court is setting it? It could be. I think context is the big worry here. Okay, so you're not saying whether it's set by a trial court or not is relevant. You're saying it's what the conditions are. I think both are relevant. We can't consider the fact that in this case a trial court did set the terms of the bond, so when he could, you know, the places that he could go to pre-approved. And as you guys pointed out previously, it was transferred into the different services, pretrial services, but that was completely administerial, and they had no discretion, you know, to change what the bond terms were. So I think that does lean more towards supervision rather than detention. But then also additional context as to whether, as you said, it was 7 a.m. to 7 p.m. Did he have approved stops? Was he able to have visitors? Was it a limited amount of times he could leave a day or per week? And that could be. It could. It could be a home confinement whereby credit would be given. It could, you know, but it just, again, all those different, you know, pieces, you know, weighed out to, you know, with the specific facts that we have at hand plays into that. And I think in this case what we've dealt with leans more towards supervision rather than home detention. He had massive potential for movement, 24 hours a day. If he did not leave, it's because he did not request to. If he wanted more pre-approved stops or things like that, he could have asked. All he had to do was, you know, comply with that. He did not have a cutoff on when he could leave. He did not have a time where he had to stay and, you know, he could not leave before 7 p.m. He had massive potential for movement. So I think that goes more towards just supervision, making sure that he's in compliance and showing up, you know, to coordinate things as he should. I don't think that is consistent. We're not of the opinion that Rios, what Rios says, if the conditions are set by a judge, end of story, no credit for time served. But if they're not, then you can give credit for time served. Sorry. That's okay. Did you hear my question?  No, take your time. Very much. I think you meant right. Very much, yeah. What did I say? Rios, sit down. You're serious. It's fine. I do think the trial court administering the conditions of bond plays a large part in determining whether it's home supervision, whether the pretrial services, you know, takes it over. Again, I do believe that comes to be more custodial because, again, they have way more discretion. It's not a ministerial. You have to answer to them in a way rather than just being a monitoring type of entity. So I do kind of lean towards more the fact that if the trial court is administering it and just, you know, this is your bond, these are the terms, and we can go, you know. Regardless of whether they have a curfew. I believe, you know, regardless, yeah, it could be, to me, more still home supervision, just because of the attendance, especially at the pretrial stage. I think that's also, you know, informative here because that's not what we're dealing with. I think maybe if this was, like, you know, after he was, you know, convicted, and then, you know, maybe a lot of restraints put on him, maybe you can count that as that was custody, you know. He was convicted of aggravated domestic violence, correct? Yes. He had six years. And if you were to agree with his position, he'd be released now. Pretty much. Yeah, pretty much. And, again, I just don't think that's what the statute intended. Even if we're separating from his specific facts in general, I believe the statute is not ambiguous. There's no ambiguity. We don't need to look at another statute to inform, you know, the applicability of this one. But it's very clear that sentencing credit at the pretrial stage is just not appropriate under these circumstances. What would the incentive be for any defense attorney to try and get his client out of jail if he's not going to get any credit? I mean, with the no cash bail system that we have right now, what would the incentive of any defense attorney, once the client has a possibility of being convicted, to let him out of jail if he's never going to get any credit? I think never is the operative word. I think there are circumstances in which he can get credit. And, you know, to be clear, the people's position is not, you know, like the defendant under no circumstance whatsoever can get credit for these things. We're just saying context matters. And in these circumstances that we're talking about this particular defendant, Mr. Randall Sanford, he was not on home detention. But as for what incentives they may have, you know, I'll leave that to them. I'm not really sure. We'll argue that in the next case.  But as I would, I would just briefly conclude for you guys. We just ask that this court affirm the trial court's order denying the defendant sentencing credit for time that he was on electronic monitoring prior to his trial. If there aren't any more questions. Thank you. Thank you. Thank you.  Justice Burkett, you asked counsel about whether Wells compels a different result here or something along those lines. And in Donahue, the defendant pled guilty under a negotiated plea. And so under the authority of Wells, which is now that a defendant who pleads guilty in a negotiated plea cannot request credit after the fact, Donahue would know that would be the answer in Donahue. So the entire analysis would not exist if it was decided today. That's not really relevant here. No, it's not. But just in response to the question about Wells. And, you know, in looking at the legislative intent, we have, you know, I argue Wells hinted at what the Supreme Court would find. And additionally, you know, amendments after the fact, you know, other amendments and other statutes that can be read together also give context. And in the, I'm sorry, 725 ILCS 5-110-5, which is the determining the amount of bail and conditions of release statute, was amended effective January 1st, 2023, which, again, does not apply to Mr. Stafford's situation. However, there the legislature added subsection H, yes, H, where it directs that if the court imposes electronic monitoring, GPS monitoring, or home confinement, the court shall set forth on the record the basis for the finding. A defendant shall be given custodial credit for each day he or she was subjected to home confinement at the same rate described in Section B of Section 5-4.5-100 of the Unified Code of Corrections. And it goes on to talk about if a defendant is on GPS monitoring with or without home confinement, how that is handled. So that amendment just further clarifies that the legislature is moving that way, is trying to signal we want defendants to get credit for pretrial home confinement. And I also want to point out that, you know, there's this, we've all been talking about the distinction between home supervision and home detention. Well, with the subsequent amendments to the statutes, we also have home confinement in the mix. And interestingly, I did it, I searched on Westlaw, and the only time the words home supervision appear in the statutes is in Section 5-110-NE5. It's the only place pretrial home supervision or even home supervision appears. And that statute was added, as I said earlier, after, it became effective after Ramos. And there is no definition of what home supervision means. There is nothing in the statutes that indicates that home supervision is necessarily exclusive of home detention. And the statutes can be read together that the... Don't we just start with the premise if they used a different word, they meant a different meaning? That is a canon of statutory construction. However, and admittedly I did not argue this in my briefs, but there is some ambiguity here about what home confinement, home supervision, home detention, what does it all mean? And to add to that, we also have some ambiguity about what does supervising authority mean? Because I also want to draw your Honor's attention to 730-ILCS-5-5-8A-7, which is the Domestic Violence Surveillance Program. Wherein they discuss, the legislature directs that prisons who are on pretrial release for domestic violence offenses, like Mr. Stanford, may be ordered to be on electronic surveillance as a condition of parole, aftercare release, mandatory supervised release, early release, probation, or pretrial release. And in that, they talk about, it says, if the Prison Review Board, Department of Corrections, Department of Juvenile Justice, or court, parentheses, the supervising authority, orders electronic surveillance. So we also have statutory language referring to the court as a supervising authority. And, you know, here, as was said by my opposing counsel, we agree, there are certain situations where somebody on pretrial home confinement, electronic monitoring, would not be entitled to credit. But this statute indicates what qualifies as home detention. Let me ask you this question. The same question that I asked her is, merely because somebody, some conditions were set by the trial court, does that mean they will never get credit for time served? That can't possibly be what it means. It can't be, right? No. Because that renders other language of many statutes superfluous and absurd. And for that reason, the mere fact that the conditions of his release, which included the electronic monitoring and the home confinement, the fact that they were set by the court, is meaningless to the analysis here. What matters is what the statute says. And the statute very clearly says that when you have significant restrictions on liberty, home confinement qualifies for home detention. And that is what happened here. And for all these reasons, we would ask this Court to reverse the trial court and grant Mr. Stafford the credit he seeks. Any additional questions? I have none. One comment. Go ahead. It's a great topic for a law review article. You should write it. Thank you, Your Honor. All right. We will be in recess until our next case, which I believe is at 1 o'clock. Ladies, great arguments. Thank you very much for your attention to detail and your quick answers to our questions. All rise.